**Douglas R. MILLER, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

**No. 86–2187.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 18, 1987.

Decided Jan. 20, 1988.

not resolve. *See* n. 1 and accompanying text.

Martha M. Glaser, Pontiac, Mich., for plaintiff-appellant.

M. Catherine Walsh, Dept. of HHS, Chicago, Ill., Janet B. Johnson–Vinion, for defendant-appellee.

Before MARTIN and GUY, Circuit Judges, and JOHNSTONE, District Judge.[*]

PER CURIAM.

█ Plaintiff, Miller, appeals from a partial denial of Social Security disability insurance benefits. The district court determined, as had the Secretary, that Miller was disabled. However, the district court set the onset date as November 1, 1982, whereas the Secretary had concluded the disability onset date was July 9, 1985. Miller contends the correct date should be October 15, 1981. The Secretary has not filed a cross-appeal. Under these circumstances, it is still the Secretary's decision that is under review since the Secretary, as well as the district court, found that plaintiff was not entitled to benefits for the period October 15, 1981, to November 1, 1982. Since we find substantial evidence supports the Secretary's decision, we affirm.

## I.

Miller was born on August 22, 1935, and has a seventh grade education. His relevant work history consists of employment at Eaton Springs Heat Treatment Company where he was employed from 1969 until May 12, 1982. Plaintiff worked full time until October 16, 1981, when he entered the hospital complaining of shortness of breath, fever, and a persistent cough. He was diagnosed as suffering from chronic obstructive lung disease, asthmatic bronchitis, and bronchopneumonia. X-rays taken in July and November of 1981 revealed bilateral emphysema. Miller was an overweight heavy smoker. On October 31, 1981, Miller was discharged in an improved condition and returned to work, although he was not in daily attendance.

On May 12, 1982, plaintiff entered the hospital again. X-rays revealed large emphysematous bullae with pulmonary congestion. Laboratory tests and an EKG were normal. He was discharged after four days. His doctor prescribed antibiotics and a bronchodilator.

On June 21, 1982, Miller filed for disability insurance benefits alleging that emphysema and asthma rendered him disabled as of October 15, 1981. During June and July of 1982, Miller continued to complain of shortness of breath on exertion and received out-patient treatment and intermittent positive pressure breathing (IPPB) treatments. On June 25, 1982, Dr. Mehrabian, Miller's treating physician, indicated Miller was totally disabled.[1] At this point in time Miller had undergone no pulmonary function tests.

---

[*] Honorable Edward H. Johnstone, United States District Court, Western District of Kentucky, sitting by designation.

1. This conclusion was written in a brief four-line "to whom it may concern" letter apparently solicited by Miller or an attorney.

In July, 1982, Miller underwent two pulmonary function tests four days apart. The first was conducted by Dr. Mehrabian and the second, by Dr. Wells, on behalf of the Disability Determination Service. The values shown were significantly higher in the second test than in the first. From August, 1982, through November 1, 1982, Miller saw his doctor twice. He did not require outpatient IPPB [2] therapy or other specific treatment. Although advised of the dangers, he continued to smoke heavily during this period.

On November 1, 1982, plaintiff entered the hospital complaining of pain on exertion, shortness of breath on exertion, and black-outs. His EKG showed ST–T wave changes and a chest x-ray revealed emphysematous bullae, calcification, and hyperinflation of the lungs consistent with chronic obstructive lung disease. In a discharge summary written on November 5, 1982, after x-rays, blood-gas studies, and the aforementioned pulmonary function tests, Dr. Mehrabian concluded:

> In my opinion this gentleman is totally disabled, unable to perform any steady job, especially if any physical activities are involved. His shortness of breath interferes with any type of work that he possibly will be able to do.

In the meantime, Miller's request for disability benefits had been going through administrative processing and was eventually denied. It was also denied after a hearing by an administrative law judge (ALJ) on August 11, 1983. The Appeals Council denied further review and Miller appealed to the United States District Court for the Eastern District of Michigan. The magistrate to whom the matter was referred, recommended that the case be remanded to the Secretary for additional investigation of the effects of plaintiff's smoking on his respiratory condition. On March 25, 1985, the district judge, after hearing oral argument, adopted the magistrate's recommendation.

Pursuant to the remand, a new hearing was held before an ALJ. On November 5, 1985, the ALJ issued an opinion finding the plaintiff disabled, but concluding that if Miller had followed the physician's prescribed treatment and not smoked, he would have retained the functional capacity for light work. Accordingly, the ALJ found that Miller was not under a disability.

The Appeals Council granted review and on March 17, 1986, rejected the ALJ's conclusions. The Council found that prior to July 9, 1985, plaintiff could perform a reduced range of light work; that on July 9, 1985, his chronic obstructive pulmonary disease met Appendix 1, Listing 3.02; and that, therefore, as of July 9, 1985, plaintiff was under a disability. Plaintiff again appealed the Secretary's decision to the district court alleging that he became disabled on October 15, 1981.

Again the case was referred to a magistrate and the magistrate recommended that benefits be awarded as of November 1, 1982. Over objections, on October 30, 1986, the district judge adopted this recommendation. It is from this judgment that plaintiff appeals.

## II.

Unlike the more typical social security appeal, we deal here with the date of disability rather than the question of whether there is a disability. Although the Secretary and the district court disagreed on the disability onset date, they both concluded that for the period in question—October 15, 1981, to November 1, 1982—Miller was not disabled. In our review of this question, we find it appropriate to divide the time period in question into two parts. The first is October 15, 1981, to May 12, 1982. The second is May 13, 1981, to November 1, 1982. We discuss these two periods seriatim.

### A. *October 15, 1981, to May 12, 1982*

This period really needs little discussion because plaintiff was actually working at his old job during this time period. When a claimant is working, and the work he does constitutes substantial gainful ac-

---

**2.** After June, 1982, Miller did have a home IPPB portable unit.

tivity, he must be found not disabled regardless of his medical condition. 20 C.F. R. § 404.1520(a), (b).

Miller testified, and his employer confirmed, that from October, 1981, through May 12, 1982, plaintiff worked as a heat treatment laborer. Plaintiff's work required significant physical activities, and he worked with reasonable regularity, attending and performing his duties on more than two-thirds of the possible work days. Plaintiff's work was the kind which is usually done for pay or profit, and the record indicates that plaintiff was paid during this period. His earnings from this work averaged in excess of $300 per month. *See* 20 C.F.R. § 404.1574.

Based upon this record, we have no difficulty in concluding that substantial evidence supports the Secretary's finding of no disability for the period up to May 12, 1982.

B. *May 13, 1982, to November 1, 1982*

██ The Secretary does not dispute that subsequent to May 12, 1982, Miller suffered from a severe impairment which made it impossible for him to perform his past work. However, if despite a severe impairment a claimant still retains the residual functional capacity to perform work to be found in the national economy, he is not disabled. Here, the Secretary and the district court concluded that plaintiff could still perform a reduced range of light work.

Although this is the type of record that arguably would support different dates for disability onset, we cannot say the date of November 1, 1982, is one unsupported by substantial evidence.[3] The primary reason why this date passes muster is that, prior to this time, Dr. Mehrabian's opinion that Miller was disabled (June 25, 1982) was just that—a bare opinion. It was not supported by the necessary laboratory and clinical findings. The determination of disability is the prerogative of the Secretary and a physician's opinion is not conclusive of the ultimate fact of disability. *Houston v. Sec-*

*retary of Health and Human Services,* 736 F.2d 365 (6th Cir.1984). Dr. Mehrabian's November 5, 1982 discharge summary opinion was much more complete. It was rendered after pulmonary function tests and a period of hospitalization and was properly accorded significance at this point in time. Under such circumstances, we would be hard put to engage in further second guessing relative to the disputed period of disability involving less than six months. Finding the requisite substantial evidence, we AFFIRM.

---

**3.** The Secretary, by not cross-appealing, has, in effect, adopted this date chosen by the district court for disability onset purposes.