920 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arnold THACKER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-5546.
 United States Court of Appeals, Sixth Circuit.
 Dec. 12, 1990.
 
 Before KRUPANSKY and MILBURN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Arnold Thacker appeals the judgment of the district court affirming the denial by the Secretary of Health and Human Services of Thacker's application for social security disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 The application for benefits which generated this appeal was the claimant's sixth application for disability benefits. None of the previous applications were appealed beyond the Appeals Council. Claimant's insured status expired on December 31, 1983, and, in ruling on this application, the Secretary treated the previous denials, the last of which was rendered February 9, 1983, as res judicata to any claim for benefits on or before that date. Thus, even though the application claimed an onset date of July 21, 1978, the Secretary treated the relevant time period for the disability determination as February 10, 1983, to December 31, 1983.
 
 
 3
 Claimant's past relevant work was as a coal miner. He attained a sixth-grade education and was forty-seven years of age at the time of the last administrative hearing.[1] The ALJ determined that the claimant's low back pathology and a pulmonary condition were severe impairments which precluded his past relevant work but did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further determined that the claimant had the residual functional capacity to engage in a limited range of light work further reduced by certain nonexertional impairments relating to ability to stoop, crouch, kneel, crawl, push and pull.[2] The claimant was also found to have several environmental restrictions but no medically determinable mental impairment. Based on the answer of a vocational expert ("V.E.") to a hypothetical question which incorporated the accepted impairments and claimant's age, education and work history, the ALJ found that a significant number of jobs existed in the national economy which the claimant could have performed during the relevant time period.
 
 
 4
 The medical evidence before the ALJ consisted primarily of the reports and opinions of Dr. Harvey Page, M.D., claimant's treating physician, and a more detailed and documented report by Dr. Guberman, M.D., a consultant chosen by the Secretary. Dr. Page's diagnosis in a May 1983 report was coal worker's pneumoconiosis, chronic gastritis, and lower back pain. Dr. Page reported that claimant could not bend, lift or strain but commented that the claimant could be trained for sedentary work. Dr. Page noted that claimant had no mental or emotional disorders.
 
 
 5
 In a letter dated February 26, 1986, to claimant's attorney, the only reported abnormal finding was a positive test for straight leg raising of the left leg; however, Dr. Page stated, "It is my opinion that Mr. Thacker is 100% totally disabled for substantial gainful activity because of his pulmonary status and because of his back condition." In a deposition taken on January 19, 1988, Dr. Page affirmed his opinion of disability; however, when questioned whether claimant should avoid medium-level work, Dr. Page was more equivocal by answering, "Probably."
 
 
 6
 Dr. Guberman examined the claimant on June 11, 1983. He noted that the claimant's "intellectual functioning and mental status [were] normal." Dr. Guberman obtained chest and back x-rays and pulmonary function studies besides personally examining claimant. There was some evidence of obstructive airways disease but no shortness of breath when lying flat or after mild exertion. There was also some evidence of degenerative joint disease but no joint swelling, no range of motion abnormalities in the lower back, and no evidence of nerve root compression. Claimant's gait was normal, and he was comfortable when lying down and sitting.
 
 
 7
 Based on a review of the medical evidence and apparently placing considerable weight on Dr. Guberman's evaluation, Dr. Oscar Thompson, a board certified internist, opined that during the relevant time period, claimant could lift and carry up to fifteen pounds occasionally and that his ability to stand, walk, and sit were unaffected. Dr. Thompson believed that claimant could occasionally stoop, crouch, kneel and crawl, but should not push or pull more than twenty pounds. Dr. Thompson recognized that claimant should not be exposed to temperature extremes, humidity extremes, chemicals or dust.
 
 
 8
 Dr. Max Lurie, M.D., saw claimant after the ALJ rendered his recommended decision. Dr. Lurie reported that claimant was mildly retarded and suffering from generalized anxiety disorder. According to Dr. Lurie, the mental impairments were not disabling by themselves but were disabling when considered in combination with claimant's other impairments. Dr. Lurie's opinion, however, was based only on his single consultative interview and claimant's history as shown through his subjective complaints and medical records. Notably, Dr. Lurie's report was not accompanied by the results of any standardized psychological or intelligence tests.
 
 
 9
 Dr. Lurie's report was submitted to the Appeals Council, and the Appeals Council considered Dr. Lurie's report but rejected it, citing a lack of objective testing and observations of normal mental and emotional status by doctors who saw claimant during the relevant time period. The Appeals Council adopted the findings of the ALJ, and the district court affirmed.
 
 
 10
 The issues presented in this appeal are (1) whether the evidence relied on by the Secretary in denying benefits is rendered less than substantial by the Secretary's rejection of the opinion of Dr. Max Lurie, (2) whether substantial evidence supports the Secretary's finding that claimant was not disabled during the period from February 1983, until December 31, 1983, and (3) whether this court should consider periods prior to February 1983, where the Secretary treated benefits during that period of time as barred by the doctrine of res judicata because of the denial of a prior application for benefits effective February 9, 1983.
 
 II.
 A.
 
 11
 We review social security cases to determine whether the Secretary applied the correct legal criteria and to determine whether the Secretary's factual findings are supported by substantial evidence based on the record as a whole. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 B.
 
 12
 Claimant argues that the Secretary "refused to consider the report of Dr. Lurie based on a series of isolated quotes and findings which do not negate the specific findings of Dr. Lurie related to his specialty in psychiatry." Claimant places considerable emphasis on the fact that he was taking medication known as Ativan, which claimant says is shown by the Physician's Desk Reference as effective for "management of anxiety disorders." The mere fact that a claimant is taking medication to calm nerves does little to establish a mental impairment. See Foster v. Bowen, 853 F.2d 483, 488 (6th Cir.1988) (Valium). Any reliance which would otherwise be justified in this case is significantly reduced by the fact that Dr. Page, who prescribed the Ativan, observed that claimant had no mental or emotional disorders.
 
 
 13
 More importantly, as held by the district court and the Appeals Council, claimant's heavy reliance upon the report of Dr. Lurie is misplaced. Although claimant characterizes Dr. Lurie's evaluation as the uncontroverted evaluation of a specialist, the record does not contain a curriculum vitae showing that Dr. Lurie is a specialist in the area of mental impairments. Even if Dr. Lurie were a treating specialist, which he is not, the Secretary was justified in rejecting his opinion here because there were "good reasons" based on the lack of testing, the fact that other doctors who saw the claimant during the relevant time reported his mental status as normal, and the fact that Dr. Lurie first examined claimant long after the relevant time period. See Miller v. Secretary of Health and Human Serv., 843 F.2d 221, 224 (6th Cir.1988) (per curiam); 20 C.F.R. Subpt. P, App. 1, Sec. 12(B) (stating a need for medical evidence comparable to psychological tests to document mental disorders); Hardaway v. Secretary of Health and Human Serv., 823 F.2d 922, 927 (6th Cir.1987) (per curiam) (opinion of treating physician can be rejected where there is substantial evidence to the contrary); Siterlet v. Secretary of Health and Human Serv., 823 F.2d 918, 920 (6th Cir.1987) (per curiam) (report rendered "minimally probative" where doctor saw claimant eight months after expiration of insured status).
 
 
 14
 Claimant also criticizes as an impermissible medical opinion the Appeals Council's observation that "a functional illiterate is not necessarily mildly retarded." Upon examining this statement in context, we conclude that it is more an explanation of the Appeals Council's reasons for rejecting Dr. Lurie's opinion than an interjection of impermissible medical opinion.
 
 
 15
 Once the Secretary determined that claimant could not perform his past relevant work, the burden shifted to the Secretary to show that claimant possessed the ability to do other work. In this case, the Secretary carried that burden by means of a hypothetical question to a V.E. which accurately portrayed claimant's proven physical and mental impairments. See Varley v. Secretary of Health and Human Serv., 820 F.2d 777, 780 (6th Cir.1987). The question accurately portrayed claimant's impairments because the factual assumptions underlying the hypothetical question were supported by substantial evidence. Id. Although we need not list all the evidence that supports a finding of substantial evidence, we point out that the findings of Dr. Guberman as incorporated into Dr. Thompson's assessment of physical capabilities support the factual assumptions underlying the ALJ's hypothetical, that there was a virtual absence of objective evidence underlying Dr. Page's reports, and that the Secretary was justified in rejecting Dr. Lurie's opinion.
 
 
 16
 Since substantial evidence supports the finding that claimant was not disabled prior to December 31, 1983, we do not reach the issue of the res judicata effect of prior denials upon the award of benefits. We do note, however, that "[t]his Circuit has consistently held that the Secretary may apply the doctrine of res judicata to bar an award of benefits for a period of disability wherein the application for such a period of disability has been previously denied." Wills v. Secretary of Health and Human Serv., 802 F.2d 870, 871 n. 2 (6th Cir.1986).
 
 III.
 
 17
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This application resulted in two reversals and remands by the district court generating a total of three administrative hearings and three decisions. Unless otherwise stated, all references in this opinion are to the ALJ's last hearing and decision as adopted by the Appeals Council
 
 
 [2]
 We do not concern ourselves here with whether push-pull restrictions are truly nonexertional impairments as this appeal focuses on other issues