904 F.2d 36
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vernon E. COTTRELL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-6232.
 United States Court of Appeals, Sixth Circuit.
 May 30, 1990.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and CHARLES W. JOINER, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Appellant Vernon Cottrell appeals the decision of the District Court affirming the Secretary's denial of social security and supplemental income benefits. Because the decision was supported by substantial evidence, we AFFIRM.
 
 
 2
 Appellant, fifty-two at the time of his administrative hearing, filed for disability and supplemental security income benefits on September 16, 1986 for disabilities beginning July 13, 1986. He claimed entitlement based on both physical and mental impairments. The District Court granted summary judgment for the Secretary after adopting a magistrate's recommendation that appellant failed to establish that he was disabled within the meaning of the Social Security Act.
 
 
 3
 Appellant injured his right leg in a construction accident in 1982. He was treated by a Dr. Perdue. Despite complaints of pain, Dr. Perdue reported that appellant had full knee mobility and that there was no visible swelling or abnormality where he was injured. In May of 1982, appellant was hospitalized by a Dr. Henderson, who surgically repaired appellant's torn ligament. His leg apparently improved with physical therapy.
 
 
 4
 Appellant was examined by a Dr. Passman in December of 1982 who reported some swelling and atrophy of the knee, but noted that it would improve with continued therapy. Appellant was also examined by a Dr. Taylor who, in notes dated from September 14, 1983 to April 30, 1985, said appellant could return to light duty work.
 
 
 5
 On November 10, 1986, a Dr. Quader noted that appellant could walk unassisted, could dress and undress himself, and could get on and off the examining table. Examination of his right knee and ankle showed no swelling, tenderness, deformity, or muscle spasms, and an X-ray revealed only minimal degeneration.
 
 
 6
 Dr. Cave examined appellant on November 17, 1986 and reported that appellant appeared "anxious" and "somewhat depressed," and also that he had mild hypertension. The report noted that these symptoms were "probably situational."
 
 
 7
 Appellant suffered another injury on April 27, 1987 while mowing his lawn. The big toe on his left foot was amputated, and he was discharged from the hospital on May 1, 1987. Dr. Garcia in September of 1987 and Dr. Skaggs in April of 1988 reported appellant had normal EEG's and no functional disorders. Dr. Garcia stated that appellant should be able to lift, push, and pull up to 20 pounds and sit eight to ten hours. He should also be able to walk for between one and four hours and stand for between four and eight hours. Dr. Skaggs, however, said appellant should lift no more than ten pounds and stand or walk no more than one hour per day, and then only for periods not exceeding 15 minutes. He noted that appellant was not restricted in terms of sitting.
 
 
 8
 Appellant was examined by a psychiatrist, Dr. Blose, on March 24, 1988. An April 1, 1988 letter to appellant's attorney indicates that he was "severely disabled and suffering from a unipolar affective disorder (ie. [sic], major depression)." On a sheet accompanying the letter, Dr. Blose checked boxes indicating that he had extreme restrictions of activities in daily living, extreme difficulties in maintaining social functioning, constant difficulties of concentration, and continual episodes of deterioration or decompensation in work settings. He concluded that appellant displayed "[s]ymptoms resulting in complete inability to function independently outside the area" of appellant's home. However, there is no evidence in the record which supports Dr. Blose's medical conclusions.
 
 
 9
 On October 31, 1987, appellant was given a consultative psychiatric examination by a Dr. Kernohan. Dr. Kernohan concluded that appellant's "restlessness, memory and ... physical problems make it ... impossible for him to respond to customary work pressures in a routine work setting." He also said that appellant "is in good contact with reality but he is emotionally instable and markedly irritable." Dr. Kernohan finally concluded that appellant had no difficulty with comprehension and that his thought processes were not abnormal.
 
 
 10
 The Administrative Law Judge (ALJ), in denying appellant's claim, found that he was capable of performing his past relevant work as a night watchman. He also determined appellant retained enough residual functional capacity to perform related work activities if they did not involve lifting and carrying. He also discredited Dr. Kernohan's conclusion as not supported by his findings and found that appellant was not mentally impaired.
 
 
 11
 Our standard of review is whether the decision denying benefits is supported by "substantial evidence," Richardson v. Perales, 402 U.S. 389, 390 (1971), that being such relevant evidence that a reasonable mind would accept as adequate to support a given conclusion. Id. at 389. If supported by substantial evidence, the findings are considered conclusive, 42 U.S.C. Sec. 405(g), and we may neither resolve conflicts in the evidence nor make decisions regarding credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 12
 Appellant argues the Secretary ignored the reports of Dr. Skaggs and Dr. Blose in determining that he was not physically disabled. Dr. Skaggs' report limited appellant to carrying ten pounds occasionally and limited him to standing for one hour per day, with no period exceeding 15 minutes, and that he should never climb or kneel and should only stoop or crouch occasionally. While it is true that Dr. Skaggs was appellant's treating physician, the Secretary is not bound by his opinion in the face of other, substantial evidence that he is not disabled. Hardaway v. Secretary of Health and Human Servs., 823 F.d 922 (6th Cir.1987). The opinion of a treating physician is not conclusive, since the Secretary is required to consider the entire evidence of record in determining disability. 20 C.F.R. Sec. 404.1527; Miller v. Secretary of Health and Human Servs., 843 F.2d 221 (6th Cir.1988). In addition to Skaggs' opinion, the Secretary considered Dr. Garcia's opinion that appellant could lift, push, and pull 20 pounds and that he could sit eight to ten hours and walk one to four hours. The record also shows Doctors Passman, Taylor, Quader, and Cave found appellant's ligaments stable. Dr. Quader found no swelling, spasm, or abnormality in his examination on November 10, 1986. Dr. Taylor said appellant could return to light duty work on November 16, 1983. Finally, in an examination report on November 17, 1986, Dr. Cave said appellant had no musculoskeletal complaints.
 
 
 13
 The magistrate below, in considering Dr. Skaggs' report, correctly determined that it did not establish disability. Even assuming Dr. Skaggs' restrictions on appellant's activities, he had residual functional capacity to perform his past relevant work as a night watchman. That job required walking a five minute round once every hour, well within the restrictions set by Dr. Skaggs' report. This, in combination with the other contrary medical evidence indicating lack of disability, constitutes substantial evidence to support the Secretary's decision.
 
 
 14
 Appellant argues that the Secretary failed to consider all of the evidence relating to his mental impairment, specifically the report of Dr. Blose. Under 20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 12.04, appellant must meet both criteria A and B to establish he has an affective disorder. Dr. Kernohan's opinion stated that he suffered sleep disturbances, feelings of worthlessness, thoughts of suicide, and difficulty in concentration, which meet the requirements of part A. However, the magistrate below determined that appellant failed to meet the requirements of part B, which provides that at least two of the following criteria be met:
 
 
 15
 1. Marked restriction of activities of daily living; or
 
 
 16
 2. Marked difficulties in maintaining social functioning; or
 
 
 17
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 18
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 19
 Id. at Sec. 12.04(B). Appellant points to the report of Dr. Blose in establishing that he meets the listings in part B. Dr. Blose's report stated that appellant has extreme restrictions on activities in daily living and maintaining social functioning, had difficulty concentrating, and had continual episodes of deterioration and decompensation in work and work-like settings. While the report nominally seems to satisfy the part B requirements, Dr. Blose's report was not considered because it was not supported by any clinical basis for his opinion. Generally, medical conclusions regarding disability, absent proper medical documentation, do not compel a finding of disability and are properly disregarded. See Cornette v. Secretary of Health and Human Servs., 869 F.2d 260, 264 (6th Cir.1988); Landsaw v. Secretary of Health and Human Servs., 803 F.2d 211, 213 (6th Cir.1986) (treating physician's opinion given deference "only if ... based on sufficient medical data.... Ultimately, the determination of disability is the prerogative of the Secretary, not the treating physician, and the brief conclusory letter from [the] treating physician, was not dispositive of the issue.") (citing Houston v. Secretary of Health and Human Servs., 736 F.2d 365, 367 (6th Cir.1984)).
 
 
 20
 Moreover, the opinion of Dr. Kernohan, a consultative examiner, provided evidence that appellant did not meet the requirements of part B. Although he did note that appellant had a "conversion disorder" which made it impossible for him to withstand usual work pressures, the ALJ rejected that conclusion as being in conflict with the textual portion of his report. In his findings, Dr. Kernohan said appellant was in contact with reality, had no difficulty with comprehension, had only a slightly impaired memory of recent events, and had only some difficulty with concentration. Dr. Kernohan also said appellant's thought processes were normal and that he suffered from neither delusions nor hallucinations. The report does not contain evidence that he satisfies any two of the conditions in part B. Although the report says appellant engages in only minimal activities (e.g., watching television and listening to the radio), it fails to show that he has a marked restriction of activities in daily living or that he has marked difficulties in maintaining social functioning. His report indicated that appellant's restlessness would make it impossible to adjust to work pressures, but it does not indicate, as the regulations require, that he suffers "repeated episodes of deterioration or decompensation" in work-like settings. The Secretary's decision denying benefits was supported by substantial evidence.
 
 
 21
 Appellant lastly claims the Secretary improperly evaluated his complaints of pain caused by his physical injury. Under Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986), a claimant's complaints of pain must be founded on a condition which could be expected to produce the degree of pain alleged. See also 20 C.F.R. Sec. 404.1529. The evidence of record is at best ambiguous. Some reports indicated physical problems, while others noted nothing wrong with appellant. Dr. Quader noted in November 1986 that appellant could walk unassisted and get on and off the examining table, and that his knee showed no swelling, tenderness, deformity, or spasm and only mild degeneration. Dr. Garcia said appellant was not subject to any physical limitations and ruled out the existence of any functional disorder. Other reports, most notably Dr. Skaggs', indicated that he had a decreased range of mobility and some swelling.
 
 
 22
 The Secretary, in considering the severity of appellant's pain, found him to not be credible. Credibility determinations by the Secretary are to be given deference, Hardaway, 823 F.2d at 928, and we find nothing in the record to bring into question the propriety of the Secretary's determination. While it is true he did not have Dr. Skaggs' report in the record when he made this determination, there was nonetheless substantial evidence to support his finding that appellant's pain was not severe. Even without this report, the credibility determination that appellant did not have the degree of pain alleged deserves deference.
 
 
 23
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation